## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CHRIS FUSETTI,                                   )
                                                 )
        Plaintiff,                               )
                                                 )
        v.                                       )        No. 1:18-cv-2905
                                                 )
BROKER SOLUTIONS, INC. d/b/a NEW                 )
AMERICAN FUNDING,                                )
                                                 )
        Defendant.                               )

## PLAINTIFF'S COMPLAINT

Plaintiff, CHRIS FUSETTI ("Plaintiff"), through his attorneys, Agruss Law Firm, LLC,

alleges the following against Defendant, BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN

FUNDING ("Defendant"):

### JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

2. This court has federal question jurisdiction because this case arises out of violations of

   federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. Venue and personal jurisdiction in this District are proper because Defendant transacts

   business in this District, and a material portion of the events at issue occurred in this

   District.

### PARTIES

4. Plaintiff is a natural person residing in the City of Brighton, Adams County, Colorado.

5. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. §

   153(39).

6. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. §

153(39).

7.  Defendant is a California business corporation based in the City of Tustin, Orange County, State of California.

8.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

9.  Within four (4) years of Plaintiff filing this Complaint, in or around May 2017, Defendant began calling Plaintiff's cellular telephone at xxx-xxx-5555, which included or introduced an advertisement or constituted telemarketing.

10. Alternatively, Defendant is attempting to collect an alleged debt from Plaintiff that Plaintiff does not owe.

11. In or around May 2017, Defendant called Plaintiff's cellular telephone from the following telephone numbers: 888-478-8003 and 888-789-5883.

12. The following telephone numbers are Defendant's phone numbers: 888-478-8003 and 888-789-5883.

13. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

14. None of the calls Defendant made to Plaintiff were for an emergency purpose.

15. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

16. Plaintiff has never given to Defendant prior express written consent to contact Plaintiff as described herein.

17. Plaintiff has never given to Defendant prior express consent to contact Plaintiff as

described herein.

18. Even if Plaintiff provided Defendant with his cellular telephone number, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS").

19. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

20. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

21. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line.  After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt or solicit the sale of Defendant's products or services.

22. Within four (4) years of Plaintiff filing this Complaint, Defendant left pre-recorded voicemail messages for Plaintiff on Plaintiff's cellular telephone.

23. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

24. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

25. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

26. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

27. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the

capacity to call telephone numbers randomly.

28. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

29. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

30. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS.  This "dead air" is commonplace with autodialing and/or predictive dialing equipment.  It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated.  Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff.  The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them.  Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

31. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a.   Invading Plaintiff's privacy;

b.  Electronically intruding upon Plaintiff's seclusion;
c.  Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
d.  Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
e.  Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE
## TELEPHONE CONSUMER PROTECTION ACT

32. Defendant's conduct violated the TCPA by:

a.  Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, CHRIS FUSETTI, respectfully requests judgment be entered against Defendant, BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING for the following:

33. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

34. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

35. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

36. Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

November 13, 2018                By: /s/ Michael S. Agruss

Michael S. Agruss
SBN: 6281600
Agruss Law Firm, LLC
4809 N. Ravenswood Ave.
Suite 419
Chicago, IL 60640
Tel: 312-224-4695
Fax: 312-253-4451
michael@agrusslawfirm.com
Attorney for Plaintiff